JOHN L. BURRIS, Esq./ State Bar #69888
BENJAMIN NISENBAUM, Esq./State Bar #222173
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone:  (510) 839-5200
Facsimile:   (510) 839-3882

MICHAEL J. HADDAD, Esq./ State Bar #189114
JULIA SHERWIN, Esq./ State Bar #189268
HADDAD & SHERWIN
505 Seventeenth Street
Oakland, CA 94612
Telephone: (510) 452-5500
Facsimile:  (510) 452-5510

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WARD;  JAMES TYSON; MARK ENGRAM; MICHAEL HOLMES; RICHARD RIX; TONY ARMSTRONG;<br><br>               Plaintiffs,<br><br>    vs.<br><br>CITY OF OAKLAND,  a municipal corporation; WAYNE TUCKER, in his capacity as Chief of Police for the CITY OF OAKLAND; BRADLEY BAKER, individually and in his capacity as a police officer for the CITY OF OAKLAND; RICHARD VASS, individually and in his capacity as a police officer for the CITY OF OAKLAND; T. MORK, individually and in his capacity as a police officer for the CITY OF OAKLAND;  , individually and in her capacity as a police officer for the CITY OF OAKLAND; and,  DOES 1-25, inclusive,<br><br>               Defendants.<br>_____/ | Case No. C 07 04179 TEH<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS.**<br>**JURY TRIAL DEMANDED** |

JURISDICTION

1.      This action arises under Title 42 of the United States Code, Section 1983.  Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343.  The unlawful acts and practices alleged herein occurred in the County of Alameda, California, which is within this judicial district.

PARTIES

2.      Plaintiff herein, DAVID WARD ("WARD"), is readily recognizable as an African-American male and was at all times herein mentioned a citizen of the United States residing in Alameda County in California.

3.      Plaintiff herein, JAMES TYSON  ("TYSON"), is readily recognizable as an African-American and was at all times herein mentioned a citizen of the United States residing in Alameda County in California.

4.      Plaintiff herein, MARK ENGRAM  ("ENGRAM"), is readily recognizable as an African-American and was at all times herein mentioned a citizen of the United States residing in Alameda County in California.

5.      Plaintiff herein, MICHAEL HOLMES  ("HOLMES"), is readily recognizable as an African-American and was at all times herein mentioned a citizen of the United States residing in Alameda County in California.

6.      Plaintiff herein, RICHARD RIX ("RIX"), is readily recognizable as an African-American and was at all times herein mentioned a citizen of the United States residing in Alameda County in California.

7.      Plaintiff herein, TONY ARMSTRONG ("ARMSTRONG"), is readily recognizable as an African-American and was at all times mentioned herein a citizen of the United States residing in Alameda County in California.

8.      Defendant City of Oakland ("CITY") is a municipal corporation, duly organized and existing under the laws of the State of California.  The City operates under its authority the Oakland Police Department.

9.      At all times mentioned herein, Defendant WAYNE TUCKER ("TUCKER") was employed by Defendant CITY as Chief of Police for the Defendant CITY.  He is being sued in his official capacity as Chief of Police for the City.

10.      At all times mentioned herein, Defendant officer BRADLEY BAKER ("BAKER") was employed by Defendant CITY as a police officer.  He is being sued individually and in his official capacity as a police officer for the City.

11.      At all times mentioned herein, Defendant officer RICHARD VASS  ("VASS") was employed by Defendant CITY as a police officer.  He is being sued individually and in his official capacity as a police officer for the City.

12.      At all times mentioned herein, Defendant officer T. MORK  ("MORK") was employed by Defendant CITY as a police officer.  He is being sued individually and in his official capacity as a police officer for the City.

13.      Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 25, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein.  Plaintiffs will amend their complaint to state the names and capacities of DOES 1-25, inclusive, when they have been ascertained.

14.      In engaging in the conduct described herein, Defendant police officers acted under the color of law and in the course and scope of their employment with the City.  In engaging in the conduct described herein, Defendant police officers exceeded the authority vested in them as police officers under the United States and California Constitutions and as police officers employed by Defendant CITY.

15.      Plaintiffs are required to comply with a government code claim requirement for State causes of action. Plaintiffs DAVID WARD and  MARK ENGRAM have complied with all requirements.

STATEMENT OF FACTS

<u>FACTUAL ALLEGATIONS REGARDING PLAINTIFF DAVID WARD</u>

16.     On December 11, 2006, between 10 and 11 p.m., Plaintiff DAVID WARD, a 35 year-old African-American man, and the son of former "Sweet Jimmy's" nightclub owner James Watts, left his aunt's house located on the 800 block of Milton Street in Oakland, California.  Plaintiff WARD drove a Ford pickup truck that was registered in his father's name.  Plaintiff possessed a valid driver's license and was not on probation or parole at the time of this incident.  Plaintiff had no criminal record and worked for his father, who had recently sold his well-known nightclub located in Oakland, which Plaintiff had managed.  Plaintiff had had his wisdom teeth pulled earlier that afternoon and had pain in his jaw.

17.     Plaintiff turned onto San Pablo Avenue from his aunt's house and noticed a marked Oakland Police Department vehicle traveling in his direction.  After Plaintiff traveled about 2 to 3 blocks on San Pablo, he noticed the siren lights on the police vehicle turn on.  Plaintiff pulled over immediately the Oakland Police vehicle stopped behind him.  One Oakland Police officer, who Plaintiff alleges is Defendant Officer BRADLEY BAKER, approached Plaintiff's driver's side window and requested Plaintiff's license, registration, and insurance. Plaintiff provided the requested information to Defendant Officer BAKER.  Plaintiff asked the officer why he was being stopped, and Defendant Officer BAKER told him it was because he was not wearing a seatbelt.  Plaintiff knew that Defendant Officer BAKER's allegation was accurate. Plaintiff was not wearing a seatbelt.  Plaintiff provided the requested materials without concern. Plaintiff only expected to be issued a citation.

18.     Defendant Officer BAKER ordered Plaintiff to step out of the vehicle. Plaintiff had noticed that Defendant Officer BAKER had not used his radio after Plaintiff provided the papers to the officer. Defendant Officer BAKER ordered Plaintiff to turn around and then handcuffed him. Plaintiff complied with officer and asked him why the officer was handcuffing him. Defendnat

Officer BAKER did not respond to Plaintiff's question, but asked Plaintiff if he had any "drugs or weapons". Plaintiff told the officer that he had Tylenol with Codeine in his right front pocket. Plaintiff told Defendant Officer BAKER that he had gotten them from the dentist. The Tylenol with Codeine was sealed in its container. Defendant Officer BAKER conducted a pat search of Plaintiff while Plaintiff stood on the driver's (street) side of his truck. Plaintiff wore blue jeans without a belt and a t-shirt. The street was well-lit.

19.    Defendant Officer BAKER found the pill container Plaintiff had told him about, removed it from Plaintiff's right front pants pocket, and then returned it back to the pocket. Defendant Officer BAKER then stood behind Plaintiff and searched him from behind. To Plaintiff's surprise, Defendant Officer BAKER ran his hand on the outside of Plaintiff's jeans up and down the crack of his buttocks. Plaintiff told the officer: "You know you're not supposed to be doing this!" Defendant Officer BAKER told Plaintiff to be quiet and that he would be done in a minute.

20.    Defendant Officer BAKER walked around to face Plaintiff and pulled Plaintiffs jeans and boxer-briefs forward away from Plaintiff's waist. Defendant Officer BAKER looked down at Plaintiff's exposed genitalia. No contraband was located.

21.    Defendant Officer BAKER sent Plaintiff to his police car where another unknown Oakland Police Officer waited. Plaintiff stood on the sidewalk next to the passenger side of the Oakland Police vehicle. The unknown Oakland Police officer, who was Caucasian, about 6'2", skinny to medium build with glasses, performed a similar search of Plaintiff as Defendant Officer BAKER. The unknown Oakland Police officer searched Plaintiff from the front and used one hand to cup Plaintiff's genitals from outside Plaintiff's jeans. The unknown Oakland police officer pushed Plaintiff's genitals upward from outside of Plaintiff's jeans, and then pulled Plaintiff's jeans and

boxer-briefs away from Plaintiff's waist.  The unknown officer then looked down at Plaintiff's

exposed genitals.

22.     While the unknown officer performed the second strip search of Plaintiff, Defendant

Officer BAKER was inside the police vehicle checking Plaintiff's name for warrants. Plaintiff was

clean and the check revealed that Plaintiff was not on probation or parole and had no warrants.

Defendant  Officer BAKER then thoroughly searched Plaintiff's truck.  Again, no contraband was

located.  Defendant Officer BAKER removed the handcuffs.  Plaintiff asked Defendant Officer

BAKER why the officers had strip searched him and treated him in such a humiliating manner,

Defendant Officer BAKER threatened Plaintiff by telling him "You need to stay away from Milton,

or we will get you."

23.     Plaintiff told the officer that his Aunt lived on Milton and that he had friends in the

area, that there was no reason for him to stay away.  The unknown Caucasian officer told Plaintiff

"Why don't you be quiet before you get yourself in trouble!"

24.     Plaintiff left the scene with his jaw still in severe pain.  About two days later Plaintiff

filed an Internal Affairs complaint with the City of Oakland against the officers regarding this

incident.

25.     Subsequently, Defendant Officer BAKER made good on his threats to Plaintiff and

falsely arrested him on January 26, 2007. Defendant Officer BAKER alleged Plaintiff possessed rock

cocaine for sale. Plaintiff denies the allegation and alleges retaliation against him by Defendant

Officer BAKER.

FACTUAL ALLEGATIONS REGARDING PLAINTIFF JAMES TYSON

26.     On October 12, 2006, Plaintiff JAMES TYSON rode his niece's bicycle down San

Pablo Avenue in Oakland, California. Plaintiff TYSON rode from 32nd Street in Oakland toward a

friend's residence located near 14th Street by Jefferson Street in Oakland. Due to the late hour,

somewhat before midnight, Plaintiff rode his bicycle on the west sidewalk running parallel to San Pablo Avenue after leaving a Senior Center where his father lived.

27.     While riding, Plaintiff heard the sound of gunshots and pedaled faster to avoid any potential danger. Shortly after the sound of gunshots, an Oakland Police vehicle pulled alongside Plaintiff and the police vehicle's spotlight turned on directed at Plaintiff. Plaintiff stopped his bicycle and Defendant Officer BRADLEY BAKER stepped out of the police vehicle.  Plaintiff pedaled away from Defendant Officer BAKER and within half a block turned left onto Milton Street in Oakland.

28.     Plaintiff accidentally hit the front brake on the bicycle and fell forward over the bicycle handlebars within about half a block after he turned onto Milton Street. Plaintiff, fearing there was a warrant for his arrest, ran toward bushes in the yard of a house located on Milton Street while Defendant Officer BAKER pursued him.  Plaintiff TYSON surrendered to Defendant Officer BAKER, who asked Plaintiff TYSON: "Where's the dope?" Plaintiff TYSON possessed no contraband and told the officer that he did not have any "dope."  Defendant Officer BAKER walked Plaintiff TYSON to the sidewalk on Milton Street near where Defendant Officer BAKER's police vehicle was parked.

29.     Defendant Officer BAKER handcuffed Plaintiff TYSON's hands behind his back and thoroughly searched Plaintiff TYSON's clothing and pockets. Defendant Officer BAKER discovered a small glass pipe in one of Plaintiff TYSON's pockets.  Plaintiff TYSON wore pants, a shirt, and a jacket.  Without warning, Defendant Officer BAKER pulled Plaintiff TYSON's pants and boxer shorts down to his ankles, exposing Plaintiff TYSON's genitals and buttocks.   Plaintiff TYSON was shocked at the public removal of his clothing, exposing his private areas, and objected to Defendant Officer BAKER's actions.  Defendant Officer BAKER forcefully bent Plaintiff TYSON forward at the waist and caused Plaintiff TYSON to fall face first onto the sidewalk, with Plaintiff TYSON's head striking a fence that ran next to the sidewalk.

30.     Plaintiff TYSON, who suffers from asthma, suffered an asthma attack and told Defendant Officer BAKER, through asthma-related wheezing, that he suffered from asthma. Defendant Officer BAKER responded by telling Plaintiff TYSON that he was lying, and poked

Plaintiff TYSON several times with an object believed to be a flashlight.  Plaintiff TYSON moved around on the sidewalk until Defendant Officer BAKER pulled him up off the ground.

31.     Plaintiff TYSON demanded that Defendant Officer BAKER pull his pants up. Defendant Officer BAKER told Plaintiff TYSON that he was going to jail.  He left Plaintiff TYSON standing, handcuffed, with his pants and boxer shorts around his ankles for several minutes before eventually pulling up Plaintiff's boxers and pants.  Several other police vehicles arrived and Plaintiff TYSON was taken to Defendant Officer BAKER's police vehicle.  Plaintiff TYSON was arrested and transported to Oakland City Jail and was released after several hours.  No charges were filed against him.

32.     Plaintiff alleges, on information and belief, that defendant officers had insufficient information, and no particularized facts, to support their stop, detention, and search of Plaintiff.

33.     The detention, search, and arrest of Plaintiff described herein was done without any just provocation or cause, proximately causing Plaintiff injuries and resulting damages.

34.     Plaintiff alleges on information and belief that defendant officers performed the intrusive public strip-search without probable or reasonable cause pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches.

<u>FACTUAL ALLEGATIONS REGARDING PLAINTIFF MICHAEL HOLMES</u>

35.     On the afternoon of August 16, 2005, Plaintiff MICHAEL HOLMES was outside washing his late 70's model Bonneville in front of a friend's residence near the intersection of 107th Avenue and Pontiac in Oakland, California, when he observed two marked Oakland Police Department vehicles followed by an unmarked "task force" Oakland Police Department vehicle. Plaintiff HOLMES saw Defendant Officers RICHARD VASS and T. MORK in the front of the lead marked police vehicle.  Plaintiff HOLMES knew that he had a warrant for his arrest due to outstanding traffic tickets, and also knew Defendant Officers VASS and MORK from previous encounters with them.

36.     Plaintiff HOLMES ran to the side gate of his friend's residence to avoid detection by Defendant Officer VASS and MORK, but the two officers noticed him, stopped their vehicles, and

pursued Plaintiff into his sideyard.  Defendant Officer VASS deployed O.C. spray against Plaintiff's dogs and then handcuffed Plaintiff.

37.     Defendant Officer VASS unbuttoned Plaintiff HOLMES' pants and pulled up Plaintiff HOLMES' shirt.  Defendant Officer VASS then ran one hand around Plaintiff HOLMES' waistband between Plaintiff's pants and boxer shorts.  Defendant Officer VASS then arrested Plaintiff HOLMES on the outstanding warrants.

38.     In February of 2007, Plaintiff HOLMES was a passenger riding with a friend in the back of a Yukon tuck when Defendant Officer VASS, who was driving an Oakland Police Department vehicle, pulled the truck over and ordered only Plaintiff HOLMES to exit the truck. Plaintiff HOLMES was on probation at the time of this stop.  A second Oakland Police Department "task force" vehicle pulled up to the scene and Defendant Officer VASS handcuffed Plaintiff HOLMES.  Defendant Officer VASS asked Plaintiff HOLMES if he was on probation, and Plaintiffs told Defendant Officer VASS that he was on probation.

39.     Defendant Officer VASS, who wore no gloves, put one hand past Plaintiff's waistband between his pants and boxer shorts and ran his hand around Plaintiffs buttocks. Defendant Officer VASS then used his hand as a blade and ran his hand, applying substantial pressure, up and down the crack and anus area between Plaintiff HOLMES' buttocks.  Plaintiff possessed no contraband and was released at the scene.

40.     Plaintiff HOLMES alleges, on information and belief, that the defendant officers had insufficient information, and no particularized facts, to support their stop, detention, and search of Plaintiff.

41.     The detention, search, and arrest of Plaintiff described herein was done without any just provocation or cause, proximately causing Plaintiff injuries and resulting damages.

42.     Plaintiff alleges on information and belief that defendant officers performed the intrusive public strip-search without probable or reasonable cause pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches.

FACTUAL ALLEGATIONS REGARDING SEPTEMBER 22, 2005 STRIP SEARCH OF

PLAINTIFFS MICHAEL HOLMES, MARK ENGRAM, AND RICHARD RIX BY DEFENDANT

OFFICER VASS

43.     On the morning of September 22, 2005, Plaintiff MICHAEL HOLMES and MARK ENGRAM walked their dogs, which were puppies at the time, along C Street near the intersection of 92 Avenue in Oakland, as they did nearly every morning.  They were joined by Plaintiff RICHARD RIX, who was not on probation or parole at the time and who was not walking a dog. The three friends were stopped near 95th Street by Defendant Officer VASS who was in an Oakland Police Department patrol vehicle.

44.     Defendant Officer VASS ordered Plaintiff ENGRAM to release the leash that held his puppy (Plaintiff HOLMES' puppy was not attached to a leash), and Plaintiff complied.  Defendant Officer VASS handcuffed Plaintiff HOLMES, pat searched him, and placed him in the rear of his police vehicle.   Defendant Officer VASS then took each Plaintiff, including Plaintiff ENGRAM, HOLMES, and RIX, separately, to the side of a nearby house.  The view of that location was unobstructed from the street. Each Plaintiff was handcuffed, and Defendant Officer VASS performed the same type of search on each Plaintiff, including:  Pulling each Plaintiff's pants and boxer shorts down to their knees, exposing Plaintiffs genitals and buttocks.  Defendant Officer VASS spread each Plaintiffs buttocks with his hands and visually inspected their anuses.

45.     No Plaintiff was in possession of any contraband and all three were released at the scene.

46.     Plaintiffs allege, on information and belief, that the defendant officers had insufficient information, and no particularized facts, to support their stop, detention, and search of Plaintiffs.

47.     The detention, search, and arrest of each Plaintiff described herein was done without any just provocation or cause, proximately causing each Plaintiff injuries and resulting damages.

48.     Plaintiffs allege on information and belief that defendant officers performed the intrusive public strip-search without probable or reasonable cause pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches.

<u>FACTUAL ALLEGATIONS REGADING SUBSEQUENT STRIP SEARCH OF PLAINTIFF</u>

<u>RICHARD RIX BY DEFENDANT OFFICER VASS</u>

49.     Approximately one month later, a few days after Plaintiff RIX's birthday on October 17, Plaintiff RIX drove his Acura Legend toward his apartment located on C Street near 92nd Avenue in Oakland. As he approached his apartment an Oakland Police Department vehicle pulled in front of the apartment complex's driveway, so Plaintiff RIX pulled into a neighboring driveway waiting for the Oakland Police officer to move his car.  At the time, Plaintiff RIX drove without a license and possessed the bill of sale for his vehicle.  Defendant Officer VASS, who drove the Oakland Police Department vehicle that blocked Plaintiff's driveway, pulled the police vehicle to a stop behind Plaintiff RIX's Acura.

50.     Plaintiff RIX told Defendant Officer VASS that he had no license and requested that Defendant Officer VASS not have his car towed.  Defendant Officer told Plaintiff RIX, "we'll see about that."

51.     Plaintiff RIX showed Defendant Officer VASS his paperwork for the car and his California Identification card after exiting the car as ordered by Defendant Officer VASS.  Defendant Officer VASS handcuffed Plaintiff RIX. As he began to put Plaintiff RIX in the rear of the patrol vehicle, Plaintiff RIX told Defendant Officer VASS that he would not get in the back of the police car until VASS showed him that it was clean and there was no contraband waiting in the back of the police vehicle.  Defendant Officer VASS complied with Plaintiff's request and showed him the back of the police vehicle was clean. Plaintiff then complied and sat in the back of Defendant Officer VASS's patrol vehicle.

52.     Defendant Officer VASS then took off Plaintiff RIX's shoes. No contraband was located.  Defendant Officer VASS then thoroughly searched Plaintiff RIX's Acura, including its trunk, cabin, hood and fusebox. Again no contraband was located.

53.     Defendant Officer VASS then removed Plaintiff RIX from the patrol vehicle. He pulled Plaintiff RIX's boxer shorts back and peered down at Plaintiff buttocks. No contraband was located.  Defendant Officer VASS then pat-searched Plaintiff RIX. No contraband was located.

54.     Defendant Officer VASS asked Plaintiff what his name was. Plaintiff told the officer, and Defendant Officer VASS replied by telling Plaintiff "That's a fine name. That's my name." After obtaining Plaintiff's birthday, Defendant Officer VASS ran Plaintiff's name on the on-board computer located in the officer's police vehicle.

55.     Defendant Officer VASS pushed Plaintiff RIX forward to a set of steps on the side of the front edge of a neighbor's house.  Defendant Officer VASS ordered Plaintiff to "lean forward", and Plaintiff, who was handcuffed with his hands behind his back, complied.  Defendant Officer VASS then pulled Plaintiffs pants and boxer shorts down below his buttocks. Defendant Officer VASS squatted behind Plaintiff. Without using any gloves, Defendant Officer then spread Plaintiff RIX's buttocks apart and visually examined Plaintiff's anus.  Again, no contraband was located. Defendant Officer VASS pulled Plaintiff's pants up, removed the handcuffs, and released Plaintiff at the scene.

56.     Plaintiff alleges, on information and belief, that the defendant officers had insufficient information, and no particularized facts, to support their stop, detention, and search of Plaintiff.

57.     The detention, search, and arrest of Plaintiff described herein was done without any just provocation or cause, proximately causing Plaintiff injuries and resulting damages.

58.     Plaintiff alleges on information and belief that defendant officers performed the intrusive public strip-search without probable or reasonable cause pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches.

## FACTUAL ALLEGATIONS REGARDING SUBSEQUENT STRIP SEARCH OF PLAINTIFF MARK ENGRAM BY DEFENDANT OFFICER VASS

59.     On the afternoon of January 16, 2007, Plaintiff MARK ENGRAM, an African-American man, walked alone down Elmhurst Street from a nearby corner store located at 98th Avenue and E Street in Oakland, California.  Plaintiff noticed a marked Oakland Police Department vehicle driving nearby and was not initially concerned by the police vehicle. Plaintiff was not engaged in criminal activity and no objective police officer could reasonably believe otherwise. Plaintiff possessed no contraband or weapons.

60.     Plaintiff noticed that one of the police officers wore a baseball cap and shades.  This observation caused Plaintiff immediate consternation.  Plaintiff associated the officer wearing the baseball cap and shades with Defendant Officer RICHARD VASS, who had forced Plaintiff to submit to a humiliating public strip search on September 22, 2005, on C Street near 95th Avenue in Oakland.  Numerous people witnessed that previous public strip search, in which Defendant Officer VASS indecently exposed three African-American men, including Plaintiffs ENGRAM, HOLMES, and RIX, to public view. No arrests were made in the September 22, 2005 strip search incident.

61.     The marked Oakland Police vehicle pulled to a stop in the street next to Plaintiff, who walked on the sidewalk.  To Plaintiff's dismay, Defendant Officer VASS and Defendant Officer MORK exited the police vehicle and began questioning Plaintiff.  In a pseudo-friendly tone of voice, Defendant Officer VASS asked Plaintiff:  "Hey, how have you been? I haven't seen you in a while?"

62.     Plaintiff told Defendant Officer VASS that he had been working.  Defendant Officer VASS ordered Plaintiff to open his mouth. Plaintiff possessed no contraband, and Defendant Officer VASS found no contraband in Plantiff's mouth.  Defendant Officer VASS ordered Plaintiff to turn around, and then Defendant Officer VASS undid Plaintiff's belt.  Defendant Officer VASS shook Plaintiff's pants by grabbing Plaintiff's pants from the front. Defendant Officer VASS repeated the procedure by shaking Plaintiff's pants on each side, and then shaking the rear of Plaintiff's pants.  No contraband was located.

63.     Defendant Officer VASS then pulled Plaintiff's pants down to his thighs.  Although there was no objective basis to conduct any further invasive search of Plaintiff, Defendant Officer VASS, who wore no gloves, put one hand in between Plaintiff's boxer shorts and jeans next to the crack of Plaintiff's buttocks.  Defendant Officer VASS then ran his bare hand up and down the crack of Plaintiffs buttocks.  Again, Defendant Officer VASS found no contraband.

64.     A neighbor witnessed the invasive public search of Plaintiff by Defendant Officer VASS, while Defendant Officer MORK stood by and failed to intervene in the search. Defendant Officer VASS's search, tantamount to a sexual assault and battery, failed to locate any contraband because Plaintiff was not engaged in any illegal activity.  Defendant Officer VASS released Plaintiff at the scene. No citations or arrest warrants were issued for Plaintiff.

65.     Plaintiff alleges, on information and belief, that the defendant officers had insufficient information, and no particularized facts, to support their stop, detention, and search of Plaintiff.

66.     The detention, search, and arrest of Plaintiff described herein was done without any just provocation or cause, proximately causing Plaintiff injuries and resulting damages.

67.     Plaintiff alleges on information and belief that defendant officers performed the intrusive public strip-search without probable or reasonable cause pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches.

<u>FACTUAL ALLEGATIONS REGARDING PLAINTIFF TONY ARMSTRONG</u>

68.     On or about August 20, 2005, in the late evening, Plaintiff TONY ARMSTRONG, who had borrowed a friend's vehicle, drove to a corner grocery store located at the corner of 7th Avenue and East 17th Street in Oakland, CA.  Plaintiff left the car running while he purchased several items inside the store, including a cold beer among other items.  When Plaintiff ARMSTRONG returned to the vehicle from the store he saw four Oakland Police Officers (Defendant Officers DOES 1-4, including three Caucasian males and one African American male), dressed in black jumpsuits and examining Plaintiff's friend's vehicle.  Plaintiff, who held in his hands a bag containing his purchased items, asked the officers whether there was a problem.  One of the Defendant Officers, an older white male officer with a mustache and salt and pepper hair, told Plaintiff that he was not supposed to leave the car running unattended.

69.     The same older police officer DOE  asked Plaintiff whether he had a driver's license. Plaintiff showed the officer his driver's license. Meanwhile, one of the other Defendant Officer DOES retrieved the registration and insurance for the vehicle from its glove compartment.  The remaining two Defendant Officer DOES began thoroughly searching the parked vehicle.

70.     Without warning, the older Defendant Officer DOE who had been speaking with Plaintiff suddenly grabbed Plaintiff's right wrist and twisted Plaintiff's arm behind his back.  The sudden action caused Plaintiff to drop the bag of groceries and broke the bottle of beer Plaintiff had bought.

71.     After the officer finished handcuffing Plaintiff, he asked him what had broken in Plaintiff's bag. Plaintiff told the officer that it was his cold beer.  For unknown reasons, the Defendant Officer told Plaintiff that he should not be drinking.

72.     The unknown tall Defendant Officer bent Plaintiff, who remained handcuffed, over the hood of the vehicle. Plaintiff asked why the officers were searching the vehicle. The only response came from a different Defendant Officer, who told Plaintiff to "shut up," while another Defendant Officer read Plaintiff's name and information over his radio.

73.     The tall, older Defendant Officer DOE pat searched Plaintiff and removed several items from Plaintiff's pockets, including his wallet, and placed them on the hood of his vehicle.  One of the Defendant Officers turned the vehicle's ignition off.

74.     The tall, older Defendant Officer DOE pulled on Plaintiff's pants until they came down to his knees.  Plaintiff remained exposed in his underwear while the officer searched his waistband.  Plaintiff's underwear was not pulled down.

75.     Plaintiff possessed no contraband and Defendant Officers located no contraband.  The taller, older Defendant Officer DOE eventually pulled Plaintiff's pants back up and removed his handcuffs. Plaintiff asked the officers what the purpose of the humiliating public strip search was, but the officers provided no response.  Plaintiff asked if the officers would pay to replace the broken beer, and one Defendant Officer asked Plaintiff if he was "crazy."

76.     Plaintiff returned to the corner store and the store clerk asked him why the officers had pulled his pants down.  The store clerk replaced the beer and the items damages by the broken beer bottle and Plaintiff left the scene.  Plaintiff was not arrested or cited by police.

77.     The detention, search, and arrest of Plaintiff described herein was done without any just provocation or cause, proximately causing Plaintiff injuries and resulting damages.

78.     Plaintiff alleges on information and belief that defendant officers performed the intrusive public strip-search without probable or reasonable cause pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches.

## DAMAGES

79.     As a proximate result of Defendants' conduct, Plaintiffs suffered severe and extreme emotional distress, fear, terror, anxiety, humiliation, and loss of their sense of security, dignity, and pride as United States citizens.

80.     Plaintiffs were  illegally strip- searched by the  defendant officers noted herein without any just provocation or probable cause.

81.     The conduct of defendant officers was malicious, wanton, and oppressive.  Plaintiffs are therefore entitled to an award of punitive damages against said defendant police officers.

82.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of all attorney's fees incurred in relation to this action for violation of their civil rights.

## FIRST CAUSE OF ACTION
(42 U.S.C. Section 1983)
(All Plaintiffs Against Defendants BAKER, VASS, MORK and DOES 1-20)

83.     Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through 82 of this Complaint.

84.     In doing the acts complained of herein, Defendants BAKER, VASS, MORK, and DOES 1-20, inclusive, and/or each of them, acted under color of law to deprive Plaintiffs of certain constitutionally protected rights, including, but not limited to:

a.     The right to be free from unreasonable searches and seizures, as guaranteed by the

Fourth and Fourteenth Amendments to the United States Constitution;

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

SECOND CAUSE OF ACTION
(42 U.S.C. section 1983)
(All Plaintiffs Against Defendants TUCKER, CITY OF OAKLAND, DOES 21-25)

84.     Plaintiffs hereby reallege and incorporate by reference herein paragraphs 1 through 83 of this Complaint.

85.     As against Defendant CITY, TUCKER, and/or DOES 21-25 in his/their capacity as official policy-maker(s) for the CITY OF OAKLAND, Plaintiffs further allege that the acts and/or omissions alleged in the Complaint herein are indicative and representative of a repeated course of conduct by members of the CITY OF OAKLAND Police Department tantamount to a custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of its citizens.

86.     Plaintiffs are further informed and believe and thereon allege that the acts and omissions alleged herein are the direct  and proximate result of the deliberate indifference of Defendants CITY, TUCKER, DOES 21-25, and each of them, to repeated acts of police misconduct, including  intrusive, humiliating, public strip searches without probable or reasonable suspicion of criminal wrongdoing, which were tacitly authorized, encouraged or condoned by the Defendant CITY,  DOES 21-25, and each of them.

87.     The injuries and damages to Plaintiffs as alleged herein were the foreseeable and proximate result of said customs, policies, patterns and/or practices of Defendant CITY, TUCKER, DOES 21-25, and each of them.

88.     Plaintiffs are further informed and believe and thereon allege that the damages sustained as alleged herein were the direct and proximate result of municipal customs and/or policies of deliberate indifference in the training, supervision and/or discipline of members of the Defendant OAKLAND Police Department..

89.     Plaintiffs are further informed and believe and upon such information and belief allege that Plaintiffs' damages and injuries were caused by customs, policies, patterns or practices of Defendant CITY, TUCKER, DOES 21-25, and each of them, of deliberate indifference in the training, supervision and/or discipline of Defendants BAKER, VASS, MORK and DOES 1-20, and/or each of them.

90.     The aforementioned customs, policies or practices of Defendant CITY, TUCKER, DOES 21-25, and each of them, resulted in the deprivation of Plaintiffs' constitutional rights including, but not limited to, the following:

a.  The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

91.     Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## THIRD CAUSE OF ACTION
### (Assault and Battery)
(Plaintiffs WARD and  ENGRAM Against Defendant Officers BAKER, VASS, MORK and DOES 1-20, inclusive)

92.     Plaintiffs WARD and  ENGRAM reallege and incorporate by reference herein paragraphs 1 through 91 of this Complaint.

93.     Defendant Officers BAKER, VASS, MORK and DOES 1-20, inclusive, placed Plaintiffs in immediate fear of death, sexual battery,  and severe bodily harm, without any just provocation or cause.

94.     These defendants' conduct was neither privileged nor justified under statute or common law.

95.     As a proximate result of defendants' conduct, Plaintiffs suffered damages as hereinafter set forth.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

FOURTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)
(Plaintiffs WARD and  ENGRAM Against Defendant Officers BAKER, VASS, MORK and DOES 1-20, inclusive)

96.     Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 95 of this Complaint.

97.      The conduct of Defendant Officers BAKER, VASS, MORK and DOES 1-20, inclusive, as set forth herein, was extreme and outrageous and beyond the scope of conduct which should be tolerated by citizens in a democratic and civilized society.  Defendants committed these extreme and outrageous acts with the intent to inflict severe mental and emotional distress upon Plaintiffs.

98.     As a proximate result of Defendants' willful, intentional and malicious conduct plaintiffs suffered severe and extreme mental and emotional distress.  Therefore, Plaintiffs are entitled to an award of punitive damages as against said defendants.  Plaintiffs have suffered damages as hereinafter set forth.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

FIFTH CAUSE OF ACTION
(Violation of Civil Code Section 51.7)
(Plaintiff WARD and  ENGRAM Against BAKER, VASS, MORK and DOES 1-20, inclusive)

99.     Plaintiffs reallege and incorporate by reference  herein paragraphs 1 through 98 of this complaint.

100.    Plaintiffs are informed and believe and thereon allege that the conduct of Defendant Officers BAKER, VASS, MORK and DOES 1-20, inclusive, as described herein, was motivated by

racial prejudice against Plaintiffs.  Plaintiffs are and were readily recognizable as African-American. In engaging in such conduct, Defendants violated Plaintiffs' rights under California Civil Code Section 51.7 to be free from violence, or intimidation by threat of violence committed against them because of their race.

101.    Under the provisions of California Civil Code Section 52(b), Defendants are liable for each violation of Civil Code Section 51.7 for punitive damages, an additional $25,000.00, and for reasonable attorney's fees.

102.    As a proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages as hereinafter set forth.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### SIXTH CAUSE OF ACTION
(Violation of Civil Code Section 52.1)
(Plaintiff WARD and  ENGRAM Against BAKER, VASS, MORK and DOES 1-20, inclusive)

103.    Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 102 of this Complaint.

104.    The conduct of Defendant Officers BAKER, VASS, MORK, and DOES 1-20, inclusive, as described herein, acting in the course and scope of their employment for Defendant CITY, violated California Civil Code Section 52.1, in that they interfered with Plaintiffs' exercise and enjoyment of their civil rights and failed to make a proper or reasonable search of Plaintiffs WARD and ENGRAM.

105.    As a direct and proximate result of Defendants' violation of Civil Code Section 52.1, Plaintiffs WARD and ENGRAM suffered violation of their constitutional rights, and suffered damages as set forth herein.

106.    Since this conduct occurred in the course and scope of their employment, Defendant CITY is therefore liable to Plaintiffs pursuant to respondeat superior.

107.    Plaintiffs are entitled to injunctive relief and an award of their reasonable attorney's fees pursuant to Civil Code Section 52.1(h).

WHEREFORE, Plaintiffs pray for relief, as hereinafter set forth.

JURY DEMAND

108.    Plaintiffs hereby demand a jury trial in this action.

PRAYER

WHEREFORE, Plaintiffs pray for relief, as follows:

1.    For general damages in a sum of $5,000,000.00;

2.    For special damages in a sum according to proof;

3.    For punitive damages in a sum according to proof;

4.    For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;

5.    For injunctive relief pursuant to California Civil Code Section 52.1, enjoining Defendant CITY OF OAKLAND from authorizing, allowing, or ratifying the practice by any police officer employee of Defendant CITY from conducting unreasonable strip searches against persons;

6.    For violation of California Civil Code Sections 52 and 52.1, statutory damages, and reasonable attorney's fees;

7.    For violation of California Civil Code Section 52(b), punitive damages against Defendant police officers, $25,000.00 for each violation of California Civil Code section 51.7, and reasonable attorney's fees

8.    For cost of suit herein incurred; and

9.    For such other and further relief as the Court deems just and proper.

///

Dated:  August 13, 2007                    **The Law Offices of John L. Burris**


/s/ John L. Burris, Esq.
John L. Burris, Esq.
Attorney for Plaintiffs

Dated:  August 13, 2007                    **Haddad & Sherwin**


/s/ Michael J. Haddad, Esq.
Michael J. Haddad, Esq.
Attorney for Plaintiffs